UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-62522-Civ-MARRA/JOHNSON

In re:

CHRISTOPHER "KIT" DENISON
and MARINE REALTY, INC.,

      Appellants,

vs.

MARINA MILE SHIPYARD, INC.,

      Appellee.

_____/

Case No. 11-61398-Civ-MARRA/JOHNSON

In re:

CHRISTOPHER "KIT" DENISON
and MARINE REALTY, INC.,

      Appellants,

vs.

MARINA MILE SHIPYARD, INC.,

      Appellee.

_____/

## OPINION AND ORDER AFFIRMING DECISIONS OF THE BANKRUPTCY COURT

Appellants Christopher "Kit" Denison ("Denison") and Marine Realty, Inc.

("Marine") (together "Brokers") filed this bankruptcy appeal challenging the following

orders entered in bankruptcy court, case no. 06-13274-BKC-JKO, (1) Order Granting

Emergency Motion by Marina Mile Shipyard, Inc. to Sequester Commission Income; (2)

Partial Final Judgment in Favor of Mary Wickman, as Plan Administrator, and against Marine Realty, Inc. and Christopher "Kit" Denison, Individually; (3) Order on Partial Findings Granting Motion by MMS for Entry of Final Judgment for Return of Unauthorized Compensation to Broker; (4) Order Denying Kit Denison & Marine Realty, Inc.'s Compound Motion [ECF No. 489] in its Entirety; (5) Order Denying Kit Denison & Marine Realty, Inc.'s Motion for Summary Judgment [ECF No. 486]; and (6) Order Granting-in-Part Marina Mile Shipyard's Motion for Summary Judgment on Disgorgement Issues [ECF No. 521].[1]  This appeal challenges orders arising out of the post-confirmation review by the bankruptcy court of fees paid to Denison and Marine as real estate brokers engaged on behalf of the debtor, New River Dry Dock, Inc.  In summary, the Brokers argue that the bankruptcy court erred when it ordered them to disgorge $490,000.00 in commissions they received on the sale of the New River Dry Dock property, based upon their failure to disclose interests adverse to the estate. The parties have fully briefed the issues.  The Court has carefully considered all filings, oral argument of counsel, and is otherwise fully advised in the premises.  For the reasons stated below, the Court shall affirm all appealed orders of the bankruptcy court.

---

[1]  The omnibus order ruling on the motions listed above at (4)-(6) is published at *In re New River Dry Dock, Inc.*, 451 B.R. 586 (Bankr. S.D. Fla. 2011).

Standard of Review

On appeal, a district court reviews the factual findings of a bankruptcy court

for clear error.  Fed. R. Bankr. P. 8013; *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir.

2001).  Factual findings are not clearly erroneous unless this Court is left with "the

definite and firm conviction" that the bankruptcy court erred.  *Anderson v. City of*

*Bessemer City*, 470 U.S. 564, 573 (1985).  The district court reviews *de novo* the

conclusions of law of the bankruptcy court and application of the law to the

particular facts of the case.  *See In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993).

Procedural History and Facts Below[2]

Brokers, Denison and Marine, were court-appointed fiduciaries employed by

the bankruptcy estate to sell a marina (the "Dry Dock Property") for the benefit of

the estate.  The order approving employment was entered on October 3, 2006.  That

order was premised upon the joint application of Denison and Marine Realty, Inc. as

Brokers, which included a sworn declaration by Appellant Denison as President of

Marine Realty, Inc. that he held no interest adverse to the estate of New River Dry

Dock.

The debtor's property was sold for less than its appraised value at a price of

$12,250,000 under an order approving competitive bidding on June 11, 2007.

Thereafter, the bankruptcy court approved the debtor's Liquidating Plan of

---

[2]  There is no dispute as to the procedural history of this case.

Reorganization which vested all the debtor's assets with the plan administrator.  At a hearing on motion by the debtor to Approve Final Administrative Expenses and Distributions under Confirmed Plan Filed by Debtor, counsel for the post-confirmation plan administrator advised the bankruptcy court of reports that the Brokers had possibly acquired an undisclosed interest adverse to the debtor prior to the closing on the sale of the debtor's property.  Concerned that this adverse interest had not been previously disclosed, and that the precise opposite had been represented, the bankruptcy court *sua sponte* ordered the Brokers to show cause why they should not be required to disgorge their brokerage commission.

A show cause hearing was set for September 16, 2009.  Denison was ordered to appear with documents to explain the circumstances of the allegations, and permit the court to determine whether a disgorgement of the broker commission or any part thereof was appropriate.  Denison did not file a written response to the Order to Show Cause.  At the show cause hearing, counsel for Denison moved to continue the hearing stating he needed more time to assemble documents.  That motion was granted.  At this point, subject matter or personal jurisdiction was not challenged.

On November 13, 2009, Marina Mile Shipyard, Inc. ("Marina Mile"), the largest unsecured creditor of the New River Dry Dock estate, filed a Motion to Disgorge or to Compel Discovery supporting the return of monies from the Brokers to the plan administrator and seeking the production of documents which had been sought from the Brokers.  Marina Mile was allowed to proceed in the plan administrator's stead, in

order to conserve the plan administrator's resources, on the condition that Marina Mile would be entitled to reimbursement for its efforts only from monies it might recover on behalf of the estate.

In the course of discovery, it became apparent that, apart from the issue of whether the Brokers had held an undisclosed interest adverse to the debtor, the Brokers had been paid more than the four percent authorized under their listing agreement. Eventually, the Brokers agreed to repay an admitted overpayment of $45,000 to the plan administrator.  After a full evidentiary hearing on October 9, 2010, the bankruptcy court entered a Partial Final Judgment in favor of the plan administrator and an Order on Partial Findings.[3]

Following the production of documents and the taking of depositions, the Brokers filed a Motion for Summary Judgment seeking to dispose of the Court's Order to Show Cause and Marina Mile's Motion for Disgorgement.  The Brokers also filed a Motion to Discharge the Order to Show Cause and Strike Various Motions and Vacate Various Orders.  Marina Mile filed a Cross-Motion for Summary Judgment on Disgorgement Issues supported by e-mails to and from Denison and the depositions of representatives of the buyer entities.  The bankruptcy court then granted the Brokers *ore tenus* motion to suspend further discovery on the disgorgement issue pending disposition of the pending motions.

---

[3] These orders are the subject of the first appeal listed in the case style, Case No. 10-cv-62522-KAM.

Following briefing and oral argument, the bankruptcy court entered an omnibus order which (a) denied the Brokers' Motion to Discharge Order to Show Cause and Strike Various Motions, and Vacate Various Orders, (b) denied the Brokers' Motion for Summary Judgment, and (c) granted in part and denied in part Appellee Marina Mile Shipyard, Inc.'s Cross-Motion for Summary Judgment.  *See In re New River Dry Dock, Inc.,* 451 B.R. 586 (Bankr. S.D. Fla. 2011).  Finding that the Brokers violated the Bankruptcy Code and Federal Rules of Bankruptcy Procedure by failing to disclose the conflict of interest presented by their relationship with the buyers, the bankruptcy court ordered the Brokers to disgorge the full remaining $490,000 of paid commissions.[4]

## DISCUSSION

### Subject Matter Jurisdiction

The Brokers argue that the release language in the Liquidating Plan of Organization and the order confirming it divested the bankruptcy court of subject matter jurisdiction.  They also assert that Marina Mile, as a creditor, lacked standing to pursue collection because the plan administrator did not have the right to delegate prosecution of claims to third parties.  These issues were previously raised and addressed below.  Regarding subject matter jurisdiction, the bankruptcy court held:

The bankruptcy court has a continuing duty to review professional fees.

---

[4]  This omnibus order is the subject of the second appeal listed in the case style, Case No. 11-cv-61398-KAM.

*Dery v. Cumberland Casualty and Surety Co.*, 468 F.3d 326, 330 (6th Cir. 2006). "Dismissal of a case or a private agreement between the debtor and [professional] cannot abrogate the bankruptcy court's statutorily imposed duty to review fees" under 11 U.S.C. § 330.  *Id.*  Section 330 is the only method by which the court may police professional fees. *Id.*  It would be improper to allow fees which were obtained through dishonesty and non-compliance with the Bankruptcy Code only because a plan has been confirmed.  This is especially true where, as here, the confirmed plan specifically carves out an exception to the clause releasing pre-confirmation professionals for "gross-negligence or willful misconduct."  *See generally In re Marin*, 256 B.R. 503 (Bankr. D. Colo. 2000) (court ordered attorney to disgorge fees where he did not comply with disclosure requirements notwithstanding that case had been dismissed).  Denison and Marine engaged in self-dealing and failed to disclose the prior and continuing relationship between Denison and Israel in derogation of the disclosure requirements of Bankruptcy Rule 2014.  The confirmed plan specifically excluded release of "willful misconduct."  I have continuing subject matter jurisdiction arising under 11 U.S.C. § 330, Bankruptcy Rule 2014, and the Plan's provisions which expressly address my authority to "resolve any cases, controversies, suits or disputes with respect [to] any Plan provisions" and to adjudicate actions to "recover all Assets of the Debtor and property of the Post–Confirmation Estate" as explicitly provided in the confirmed plan.

*In re New River Dry Dock, Inc.*, 451 B.R. at 589-90 (footnotes omitted).

Article IX, § 9.2 of the Liquidating Plan of Reorganization case provides for the release, 120 days after the Effective Date of the Plan,[5] of professionals employed by the debtor "from any and all causes of action, claims, liabilities and damages relating to any manner to such professional's participation in this Case. . ."  Because the plan of reorganization did not expressly preserve the right to pursue a claim for disgorgement of fees, the Brokers argue that such a claim was precluded as a matter

---

[5]  The Effective Date of the Plan was October 15, 2007.

of law.  For this proposition, the Brokers rely on *In re MPF Holding U.S., LLC,* 443 B.R.

736, 740–45 (Bankr. S.D. Tex. 2011) (concluding that "the Fifth Circuit requires that

the parties to be sued after confirmation must be individually identified in the plan,

and that failure to do so necessarily means that the bright-line test [articulated in *In*

*re United Operating, LLC*, 540 F.3d 351 (5th Cir. 2008)][6] is not satisfied.")  *Id*. at 744.

This argument is not persuasive.

      The purpose of *In re United Operating's* specificity requirement is to place

creditors on notice of the claims the post-confirmation debtor intends to pursue so

that the creditors can determine whether the proposed plan resolves matters

satisfactorily before they vote to approve it.  Absent specific and unequivocal

retention language in the plan, creditors lack sufficient information regarding their

benefits and potential liabilities to cast an intelligent vote.  *In re United Operating,*

540 F.3d at 355; *see  In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir.

2011); *In re Bleu Room Experience, Inc.*, 304 B.R. 309, 314 (Bankr. E.D. Mich. 2004);

---

      [6]  In *United Operating*, the Fifth Circuit held that Dynasty Oil and Gas
("Dynasty"), a reorganized debtor, did not have standing to pursue common law
claims arising from defendants' pre-confirmation management of the bankruptcy
estate's assets because the plan of reorganization did not expressly reserve Dynasty's
right to pursue common law claims. The Fifth Circuit held that "[a]fter confirmation
of a plan, the ability of the debtor to enforce a claim once held by the estate is
limited to that which has been retained in the plan."  *Id*. at 355 (quoting *In re*
*Paramount Plastics, Inc.*, 172 B.R. 331, 333 (Bankr. W.D. Wash.1994), citing *In re Tex.*
*Gen. Petrol. Corp.*, 52 F.3d 1330, 1335 n.4 (5th Cir. 1995)). To preserve a claim, the
plan must "expressly retain the right to pursue such actions" and the reservation
must be "specific and unequivocal." *Id*. (citations omitted).

*In re Felt Mfg. Co., Inc.* 402 B.R. 502, 516 -518 (Bkrtcy. D. N.H. 2009). That

underlying purpose would not be served by applying the specific reservation rule to

the facts of this case.   First, there is no evidence in this record to suggest that the

Plan Administrator or any creditor had knowledge of the facts which gave rise to the

conflict of interest at the time the Plan was approved.  Thus, the purpose of the

*United Operating* rule of providing notice to creditors so they could cast an

intelligent vote for or against the plan could not be effected when the claim was

unknown.  Nor was it  possible to include a reservation of the right to pursue an

unknown claim.  Furthermore, the Brokers should not profit, and the estate and

creditors suffer, by virtue of the withholding of material information which would

have affected the decision to appoint the Brokers in the first instance.  Additionally,

the release in this case  expressly excepted from its operation willful misconduct.

The intentional concealing of a prior and continuing relationship in derogation of the

disclosure requirements of Bankruptcy Rule 2014 is comfortably encompassed by this

exception.

     Lastly, this release defense is not a question of subject matter jurisdiction at

all, but an affirmative defense analogous to a statute of limitations.  *See* Fed. R.

Bankr. P. 7008 which incorporates Fed. R. Civ. P. 8(c)(1)("In responding to a

pleading, a party must affirmatively state any avoidance or affirmative defense,

including:  . . . release . . ."). Subject matter jurisdiction defines a court's authority

to hear a particular type of case. *United States v. Morton,* 467 U.S. 822, 828 (1984);

*Davenport Recycling Associates v. C.I.R.*, 220 F.3d 1255, 1259-60 (11th Cir. 2000). Release must be pleaded; it is not jurisdictional. *Lantz v. Iron Horse Saloon, Inc.*, 717 So.2d 590, 591 (Fla. Dist. Ct. App. 1998) (disapproved of on other grounds); 10 Fla. Jur 2d Compromise, Accord, and Release § 69 (2011).

Release was not raised in opposition to the bankruptcy court's *Sua Sponte* Order to Show Cause or Marina Mile's Motion to Disgorge until the filing of a Motion for Protective Order, more than a year after the bankruptcy court initiated the review of Brokers' fees. The Motion for Protective Order was denied "for the reasons stated on the record." The transcript of the September 30, 2010 hearing on this motion has not been transcribed, which precludes meaningful appellate review. The Brokers' failure to raise this argument at their first opportunity, and their failure to appeal the entry of the judgment establishing their responsibility to repay $45,000 of the fees they received, effectively waived this affirmative defense.

The Bankruptcy Code assigns to courts a comprehensive duty to review fees, and the bankruptcy court's decision regarding professional fees is part of the original proceeding. *In re 5900 Associates, Inc.*, 468 F.3d 326, 330 (6th Cir. 2006) (bankruptcy court retains jurisdiction to review fees even after the underlying case has been adjudicated or dismissed pursuant to 11 U.S.C. § 330, and 11 U.S.C. § 329 permits the bankruptcy court to order disgorgement of fees). Release language, or even dismissal of a case, cannot abrogate the bankruptcy court's statutorily imposed duty to review fees. *Id*. The Brokers' argument that the release language at issue precludes the

bankruptcy court from conducting a review, on its own motion or of any party in interest, of compensation paid to a professional based upon discovery of an undisclosed interest adverse to the estate is rejected.  *Id.*

**Standing to Pursue Disgorgement**

The Brokers argue that neither the plan administrator, nor Marina Mile, as a creditor, had standing to pursue disgorgement of their professional fees.  With little or no discussion, the Brokers assert that because the Confirmation Order released them, and the provisions of the confirmed plan binds all creditors, Marina Mile lacked standing to pursue disgorgement.

As is clear from the history of this case, Marina Mile's motion practice was ancillary to the fee review initiated by the bankruptcy court, and was filed by Marina Mile with the express approval of the plan administrator in order to conserve estate resources.  DE 9 at 20-21 of 23.  As discussed above, bankruptcy courts possess inherent authority to review professional compensation for services performed for the estate, and to order disgorgement of these fees if it is found the professionals held an interest adverse to the interest of the estate.

Courts generally have held that to have standing in a bankruptcy proceeding, the party must be a "party in interest."  *In re Walker*, 515 F.3d 1204, 1212 (11th Cir. 2008) citing *In re Westwood Community Two Ass'n, Inc.*, 293 F.3d 1332, 1337 (11th Cir. 2002).  The Brokers have not argued that Marina Mile, a major creditor of the New River Dry Dock, was not a party in interest.  Instead, the Brokers argue that the

plan administrator had no right to delegate "prosecution of claims to third parties."

DE 11 at 5 of 9.  The Court rejects this contention.  The bankruptcy court had the

authority to order disgorgement of the fees paid to the Brokers based on a finding of

fraud on the court.  Under such circumstances, the means by which the fraud was

brought to the court's attention is inconsequential.

Fraud on the court is an unconscionable plan or scheme which is designed to

improperly influence the court in its decisions.  *Cresswell v. Sullivan & Cromwell,* 922

F.2d 60, 70 (2d Cir. 1990).  It implicates the integrity of the judicial process and does

not involve a dispute collateral to the bankruptcy case.  *Id*.  Any time an original

judgment or order was obtained through fraud on the court, the bankruptcy court

may amend that judgment or order under its inherent power.  *In re Levander*, 180

F.3d 1114, 1119 (9th Cir. 1999).  Upon a showing that the Brokers engaged in

self-dealing and failed to disclose the prior and continuing relationship between

Denison and Israel in derogation of the disclosure requirements of Bankruptcy Rule

2014 and 11 U.S.C, § 328(c),[7] the bankruptcy court was within its authority to

reexamine and rescind the order which it entered during the pendency of bankruptcy

---

[7] ". . . the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."

proceedings.  *In re 5900 Associates, Inc.*, 468 F.3d 326, 330 (6th Cir. 2006); *Matter of Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1175 (7th Cir. 1996).  The bankruptcy court wrote:

> Had Denison disclosed his relationship with Israel and SKID, I would not have approved his professional employment because it would have been apparent that he had an interest adverse to the bankruptcy estate.  The nondisclosures amount to a fraud on this court and on the Debtor's estate by a person who owed fiduciary duties to the estate. . .  Kick-backs and "back-scratching" of the sort engaged in by Denison and Israel are anathema.  I find as a matter of law upon the record before me that Denison used his position as broker for the Dry Dock Property to benefit himself without regard for his fiduciary duties.

*In re New River Dry Dock, Inc.*, 451 B.R. at 593.  Accordingly, Brokers' argument regarding lack of standing is rejected.

**Bankruptcy Court's Findings of Fact**

The Brokers also argue that the bankruptcy court erred when it entered summary judgment against them arguing "[a]ll the evidence in the record was contrary to the bankruptcy court's findings . . ."  DE 7 at 22 of 31.  Rather than refute the record upon which the bankruptcy court actually relied with their own citations to the record, the Brokers cite transcript excerpts out of context in an attempt to show clear error.  The clear error standard of review, however, is extremely deferential.  Fed. R. Bankr. P. 8013; *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir. 2001).   The transcript excerpts cited by the Brokers fail to give this Court "the definite and firm conviction" that the bankruptcy court erred.  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) ("[a] finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed") quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

For instance, the Brokers argue that not one document or witness supports the bankruptcy court's statements that "it was unknown that Denison & Marine Realty had a prior relationship with Israel," and "Denison did not disclose his relationship with Israel during the pendency of the Dry Dock sale." DE 7 at 19 of 31.  Yet, the bankruptcy court presided over the entire case, held multiple hearings and reviewed numerous well-documented motions regarding Denison's conflict of interest.  No one was in a better position to know what had and had not been disclosed to the bankruptcy court than the bankruptcy judge.  Based on his personal knowledge of the case, the bankruptcy court judge concluded numerous factors indicated that Denison did not undertake his fiduciary role in good faith and that he engaged in self dealing. 451 B.R. at 588-89.  After reading the record, this Court cannot conclude otherwise. Ample evidence supports the bankruptcy judge's findings.  The fact that the buyer, Fred Scott, testified that Denison's compensation at the new company was never discussed does not demonstrate clear error in the bankruptcy court's finding that Denison engaged in self dealing.  Moreover, Mr. Scott admitted the fact that he anticipated that Denison would serve either as a third-party manager or a member of the LLC was a consideration with respect to his willingness to go through with the transaction.  DE 7 at 26 of 31.  Sufficient evidence exists to find that Denison engaged

in self-dealing and thereby breached his fiduciary duty to the court and the estate. Based on that fact, it was appropriate and within the bankruptcy court's authority to order, post-confirmation, disgorgement of the commission.

## Other Issues

In a conclusory fashion, the Brokers mention several alleged errors without supporting their position with any substantive argument.  Such purported errors include the single sentence statements that:

- "[T]he Confirmation Order precluded the subsequent disgorgement matters under principles of res judicata and collateral estoppel."  DE 8 at 12 of 14.

- The bankruptcy court erred in striking the exemption claim of Denison in contravention of *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 323 (1999), which prohibits the exact actions undertaken by the bankruptcy court.  DE 7 at 30-31 of 31.

- The bankruptcy court erred in awarding prejudgment interest.

These allegations are made with no support in fact or law.  *See also* 451 B.R. at 589. Without substantive argument applying the law to the facts, there is nothing for this Court to address.  As to Brokers argument that the bankruptcy court erred in awarding prejudgment interest, it is clear from the record that the bankruptcy court "decline[d] to award prejudgment interest and fees."  451 B.R. at 594.  Since Brokers' reply is mute as to this issue, it is safe to assume this contention is withdrawn.  In accordance with the findings made above, it is hereby

ORDERED AND ADJUDGED that Motion by Appellee Marina Mile for Dismissal of Appeal, in Whole or in Part [DE 10] is denied in its entirety.  All orders appealed from are affirmed.  These cases are closed.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this 10th day of January, 2012.

_____

KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All counsel of record